UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JAMES DEWAYNE WEST                                    PLAINTIFF

VERSUS                          CIVIL ACTION NO. 1:12cv203-LG-JMR

MICHAEL J. ASTRUE,                                     DEFENDANT
COMMISSIONER OF SOCIAL SECURITY

**REPORT AND RECOMMENDATION**

Plaintiff, James Dewayne West ("West") filed a [1] Complaint on June 25, 2012

for judicial review of Defendant Commissioner of Social Security's ("Commissioner")

denial of West's application for disability benefits under the Social Security Act.

Before the Court is West's [13] Motion for Judgement on the Pleadings filed on

September 16, 2013, and Defendant's Memorandum in Opposition [16] filed on

December 10, 2013 and Plaintiff has not filed a Rebuttal to the Memorandum in

Opposition.

On January 26, 2009, West filed his application for a period of disability and

disability insurance benefits asserting that he had become disabled since December

15, 2005. [11, pp.100,129-30].  The Administrative Law Judge ("ALJ") issued a

decision denying Plaintiff's application initially and on reconsideration [11, pp.102-

105,108-110] on November 9, 2010, following an administrative hearing, an ALJ

issued an unfavorable decision. [11,pp11-28]. The Appeals Council denied Plaintiff's

request for review. [11,pp.5-8,14]. The Court finds that Plaintiff has exhausted his administrative remedies and has timely filed this action in this Court.  The matter is ripe for review under 42 U.S.C.§§405(g), 1383(c)(3).

Plaintiff was born on July 23,1963, thus he was 47 years old at the time of the ALJ's decision.  He attended special education classes and completed the eleventh grade [11,pp at 15,59-60, 63-67, 192].  Plaintiff has past relevant work as a galvanizer supervisor, a carpenter/construction worker, and a cable puller [11,pp. 88-93]. Plaintiff alleged he has been unable to work since December 15, 2005, due to back and foot pain [ 11,p.186].  Plaintiff's date last insured for DIB was December 31, 2008 [11, p. 156].

Plaintiff and a vocational expert (VE) testified at the hearing [11,p. 66-98]. Plaintiff testified he was unable to spell, could read "very little," and was only able to perform simple arithmetic [11,pp. 67-68].  Plaintiff explained in 1998, he was injured on-the-job when a 60 foot beam was dropped on him.  [11,pp.57, 68- 73] As a result of the accident, he alleges that broke his shoulder, ribs, right thumb, right foot and suffered compression fractures of the spine at T9 and T10. *Id*  He asserts he underwent multiple surgeries which ultimately resulted Dr. McCloskey assigning him a five percent impairment to the body as a whole due to his back injury. *Id* Plaintiff further recounted that Dr Rodriquez also performed several foot surgeries and assigned a twenty five percent impairment to the right foot. *Id* Plaintiff also explained

that physicians have assigned a twenty five percent impairment to the right thumb and a ten percent impairment to the left wrist. [11, p58].

 Since the 1998 accident, Plaintiff testified he had back and foot pain [11, at 73-74].  After the accident, Plaintiff testified his doctors released him to work at light duty with limited standing, limited walking and no climbing or squatting. *Id* Plaintiff's last job was as a galvanizing supervisor with APSI.  He attests that in this position no computer skills were required and there was no physical labor or paper work. [11,pp.60, 65] At the hearing, Counsel recounted that at some point during aforementioned employment position, Plaintiff's employer attempted to increase his duties by adding more paper and computer work and Plaintiff was unable to complete these tasks. *Id* Subsequently, Plaintiff sought a job with Job Crafters but did not inform them about his medication or his prior injuries. In February of 2006, he was terminated due to his disabilities. *Id* He contends that since 2005, he has been unable to hold a position because of his back, and leg pain, gout, hypertension, depression and illiteracy. [11,p.61] At the hearing, Plaintiff also presented the opinion of Dr. Charles Barnes from April of 2009 affirming Plaintiff's position that he is unable to work. *Id*

 Plaintiff testified that prior to his date last insured, he could walk "a couple a hundred yards," and could stand up to 30 minutes before needing to sit, but could not bend at the waist or stoop or squat to retrieve an item on the floor [11,pp. 78, 80].  He

asserted that prior to his date last insured, he could sit "30 minutes or so," he could

not bend over and pick up a styrofoam cup . [11,p 74] lift up to twenty pounds, and

comfortably carry 10 pounds [ 11,p. 75].  Plaintiff further explained that prior to his

date last insured, he was unable to climb stairs and had back pain when he extended

his arms in front of him for more than a few minutes [11, pp.76- 80].  He testified that

prior to his date last insured, his girlfriend assisted him with dressing and personal

care, and did all of the household chores [11,pp 79-84].

In deciding whether Plaintiff was disabled under the Social Security Act, the

ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §

404.1520(a) (2013)2 (Doc. 11, at 18-28).  The ALJ found Plaintiff had not engaged

in substantial gainful activity during the period from his alleged disability onset date

of December 15, 2005, through his date last insured of December 31, 2008 [11,p. 20].

Next, the ALJ found Plaintiff had the following severe impairments: a compression

fracture of the T10 vertebra, fracture of the right foot with surgical repair, and back

pain. *Id*. Through the date last insured, the ALJ discerned that Plaintiff did not have

an impairment or combination of impairments that met or medically equaled one of

the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1  [11]. After considering

the record, the ALJ found Plaintiff, through his date last insured, had the residual

functional capacity (RFC) to perform less than the full range of light work as defined

in 20 C.F.R. § 404.1567(b)3 [11].  Specifically, the ALJ found Plaintiff could walk

up to two hundred yards at a time, and sit and stand each up to thirty minutes at a time [11]. The ALJ further found Plaintiff could sit and stand for a total of eight hours a day, but required a sit/stand option [11]. The ALJ determined that Plaintiff could not climb ladders, ropes, ramps, stairs, or scaffolds, and could not squat [11,p. 24].

With that RFC, through his date last insured, the ALJ found Plaintiff could not perform his past relevant work [11,p. 26]. However, after considering Plaintiff's age, education, work experience, and RFC, along with testimony from a VE, the ALJ determined that through his date last insured there were representative occupations that existed in significant numbers in the national economy Plaintiff could perform, such as a bench assembler, an escort vehicle driver, a pizza delivery driver, and a surveillance systems monitor [11,pp. 27, 95-97]. As the ALJ found Plaintiff could perform other work, he found Plaintiff had not been disabled, as defined in the Social Security Act, at any time from December 15, 2005, his alleged disability onset date, through December 31, 2008, his date last insured [11,p. 28].

The federal courts review the Commissioner's denial of social security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 109 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Id.* (citing *Martinez v. Chater*, 64 F.3d 172, 173 (5th

Cir. 1995)). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987).  The court does not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence preponderates against the Commissioner's decision.  *Brown*, 192 F.3d at 496. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

Plaintiff has the ultimate burden of proving he is entitled to benefits. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). To meet this burden, Plaintiff must provide competent evidence to authenticate a medical or psychological condition that prevents him from engaging in substantial gainful work activity. 20 C.F.R. § 404.1512(a) (2012).  For a claimant to demonstrate he is entitled to DIB, he must prove not only that he is disabled but also that he became disabled prior to the expiration of his insured status.  *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). "Any impairment which had its onset or became disabling after the [date last insured] cannot serve as the basis for a finding of disability." *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).  Thus, Plaintiff had to show that prior to his date last insured he was not able to engage in any substantial gainful activity because of a

medically determinable physical or mental impairment that could have been expected to result in death or had lasted or was expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505(a). The Court finds Plaintiff failed to prove he was disabled prior to the expiration of his date last insured.

Plaintiff contends substantial evidence does not support the ALJ's finding that he did not meet listing 1.03 as to reconstructive surgery or surgical arthrodesis of a major weight-bearing joint prior to his date last insured as described 20 C.F.R.§404 his condition medically equals the listing. [13, pp. 5-6]. Defendant contends that the substantial evidence does support the ALJ's finding.

Listing 1.03 provides as follows:

> Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.03. "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1, §1.00B(2)(b)(1). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning. . . to permit independent ambulation without the use of a hand-held assistive device(s)

that limits the functioning of both upper extremities." *Id.* To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. *See id.* at 1.00B(2)(b)(2).

The ALJ is responsible for deciding the legal question whether a listing is met or equaled. *See* Social Security Ruling (SSR) 96–6p, 1996 WL 374180, at *3 (S.S.A.); SSR 96–5p, 1996 WL 374183, at *3 (S.S.A.); 20 C.F.R. §§ 404.1526(e), 404.1527(e). The claimant has the burden of proving his impairment or combination of impairments meets or equals a listing. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* If a claimant does not exhibit all of the requisite findings of a listed impairment, medical equivalence may be established by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment. *Id.* at 531. To do so, the claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *See id.* at 531 (citing 20 C.F.R. § 4[04.15]26(a)). A claimant's disability is equivalent to a listed impairment if the medical findings are at least equal in duration and severity to the listing findings. *Id.*

In making his decision at Step Three, the ALJ analyzed whether Plaintiff's

compression fracture of the "T10" vertebra and fracture of his right foot with surgical repair met or equaled any listing contained within Section 1.00 [ 11,p. 23]. The ALJ determined Plaintiff did not meet or equal a listing because no treating or examining physician gave the opinion that Plaintiff had an impairment or combination of impairments that met or equaled the requirement of any medical listing [11,p. 23]. Defendant asserts that the ALJ specifically considered Plaintiff's impairments under the requirements of listing 1.03 and found they did not meet or equal the listing [11,p. 23]. Moreover, Defendant contends had Plaintiff demonstrated he had surgical arthrodesis of a major weight-bearing joint in December 1999 [ 11, pp. 397, 399], he failed to present any evidence that a return to effective ambulation did not occur within 12 months of onset. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.03.

Plaintiff  admitted in his brief[13] that he did not meet that part of the listing, but he contends his condition was the equivalent because of alleged enhancing of his arthritis [13,p.at 6].  Plaintiff alleges that the condition of his right foot is more serious then determined by the ALJ.[13]  As a result of the fracture, Plaintiff had a internal fixation if the right foot fracture with a Kirschner wire of the middle cuneiform bone. [13]. Plaintiff asserts he continued to experience problems and his foot was fused with a bone graft from his hip, plates and screws. [13] Plaintiff alleges the accepted definition of "arthrodesis" is the surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells

[13].   Thus, Plaintiff contends that he clearly meets the first prong of the listed impairment at Section 1.03 of 20 C.F.R. §404, Subpart P, Appendix 1. [13]

The second prong of the listing requirement at Section 1.03 requires that the Claimant demonstrate an "inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." [13] Here, Plaintiff contends although he did return to some light/sedentary work after his injuries, he developed arthritis, as noted by Dr. Rodriguez, which was helped by the fusion done in December 1999, but has worsened now to the point that he can no longer ambulate more than 45 yards without experiencing pain [13].  Plaintiff asserts that his worsening arthritis causes him to be unable to ambulate effectively, although this condition did not occur within 12 months of his initial injury and fusion, and that his condition *medically equals* that set out in Section 1.03 of 20 C.F.R. §404, Subpart P. Appendix 1.[13]

Defendant asserts that Plaintiff failed to prove his enhanced arthritic condition occurred prior to his date last insured. *Zebley*, 493 U.S. at 531. Plaintiff conceded he returned to light/sedentary work after his injury [13,p. 13].  In June of 2000, Dr. Raoul Rodriguez, Plaintiff's surgeon, noted Plaintiff returned to work driving a water truck [11,p. 403].  Dr. Rodriguez recommended Plaintiff not continue that activity but instead perform "more of a walking around job where he can sit and walk as tolerated" *Id*. In November of 2000, Dr. Rodriguez noted Plaintiff was doing "fine" and had "no

discomfort" [11,p. 414].  In January of 2002, Plaintiff complained to Dr. Rodriguez of pain on the lateral aspect of his right foot [11, p. 410]. Upon examination Dr. Rodriguez found  x-rays of Plaintiff's right foot showed "excellent fusion," recommended a shoe insert, and instructed Plaintiff to return as needed [11,p. 410]. Dr. Rodriguez's treatment notes do not reflect Plaintiff was unable to ambulate effectively. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §1.00B(2)(b)(1), (2).

In addition, Plaintiff testified that prior to his date last insured he could walk a "couple a hundred yards" [11,p. 78].  The Court finds that Plaintiff failed to show prior to his date last insured that he had insufficient functioning to permit independent walking without the use of a hand-held assistive device that limited the functioning of both arms. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.00(B)(2)(b), 1.03. Accordingly, the Court finds that substantial evidence supports the ALJ's finding at Step Three because Plaintiff failed to demonstrate the specified medical criteria to establish he met or medically equal listing 1.03. *See Selders*, 914 F.2d at 619-20; *Zebley*, 493 U.S. at 531. The Court further finds Plaintiff's argument that his "worsening arthritis causes him to be unable to ambulate effectively"[ 13,pt 6] is not persuasive because  an impairment that became disabling after his date last insured cannot serve as the basis for a finding of disability.  *Owens*, 770 F.2d at 1280.

Plaintiff also asserts that the ALJ failed to properly assess his credibility in making his RFC finding [ 13, pp. 12-14].  The ALJ complied with the regulations for

evaluating pain and other symptoms, 20 C.F.R. § 404.1529, and provided sufficient reasons supported by substantial evidence to support his credibility finding [11, p. 20].

The agency's regulations at 20 C.F.R. § 404.1529 identify how it evaluates symptoms, including pain. The regulations hold that statements about pain and other symptoms will not alone establish disability; medical signs or laboratory findings must show there is a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged.  20 C.F.R. § 404.1529(a). If medical signs or laboratory findings demonstrate the existence of such a medical impairment, then the agency will consider the subjective allegations of pain and other symptoms along with all of the other evidence. *Id.* As part of the analysis, the agency will evaluate the intensity and persistence of the claimant's symptoms and the extent to which the alleged symptoms affect the claimant's functional limitations. *See* 20 C.F.R. § 404.1529.

When evidence documents an impairment that could reasonably be expected to produce the symptoms alleged by a claimant, the  Commissioner then evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. *See* 20 C.F.R. § 404.1529(c)(1). Questions of credibility concerning pain are within the ALJ's discretion. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).  The ALJ must consider the subjective evidence of pain, but it is within his discretion to determine the pain's disabling nature."

To determine credibility, the Commissioner considers objective medical evidence and information from the claimant and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the claimant's pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(2), (3); SSR 96-7p, 1996 WL 374186, at *5 (S.S.A.). In evaluating the extent to which a claimant's symptoms, such as pain, affects his capacity to perform basic work activities, the ALJ appropriately considers all of the available evidence, including inconsistencies in the evidence, and the extent to which there are conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant.   20 C.F.R. § 404.1529(c)(4). However, "[t]he ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Giles v. Astrue*, 433 F. App'x 241, 249 n. 30 (5th Cir. 2011).

In the pending matter, Defendant contends that the ALJ considered Plaintiff's subjective complaints and explained his reasoning for finding him not entirely credible. The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found his statements

concerning the intensity, persistence and limiting effects of these symptoms were not fully credible. [11,p. 24]. Defendant asserts that the ALJ explained his reasoning for this finding throughout his decision [11,pp. 20-26]. Defendant contends that the ALJ noted the objective medical evidence was inconsistent with Plaintiff's allegations of disabling levels of pain [11,p. 25]. 20 C.F.R. § 404.1529(c)(4). An example Defendant presents to buttress his contention is that the ALJ found there were inconsistencies in Plaintiff's subjective complaints and the objective findings. X-rays of Plaintiff's thoracic spine in March of 2009 which revealed the vertebral bodies and disc spaces appeared well maintained and in good alignment except for degenerative disc disease in the lower distal spine [11,pp. 25, 337]. An x-ray of his right foot also taken in March of 2009 revealed the previous fusion was solid and uncomplicated unlike Plaintiff's contentions of a worsening arthritic condition that was so terrible he could barely ambulate [11,pp. 25, 338]. The ALJ noted orthopedist Dr. William Hand, a State agency medical consultant who examined the evidence in May 2009, opined Plaintiff's impairments did not cause him functional limitations to the degree that would cause him to be disabled [11,pp 25, 246-53]. State agency medical consultants are utilized as experts in Social Security disability evaluation. *See* 20 C.F.R. § 404.1527(e)(2)(i). Although not specifically cited by the ALJ, medical records during the period at issue from the Community Medical Center also substantiate the objective findings that Plaintiff did not have disabling limitations

prior to his date last insured. *See Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2001);

*Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005).

Plaintiff also complained of severe left knee and elbow pain in March 2006 [11, p. 239]. Plaintiff was diagnosed with acute gouty arthritis, given an injection and prescribed medication [11, p. 239]. In April of 2006, Plaintiff was noted to have responded well to the injection and medication, and had diffuse tenderness with *mild* swelling in his left elbow and knee. [11, p. 238]. He was advised to continue his medication. *Id*. Almost a year later, Plaintiff returned with complaints of severe left knee pain [11, p.237]. He was again diagnosed with acute gouty arthritis, given an injection, and prescribed medication. *Id*. Conservative treatment weighs against finding of disability. *Castillo*, 151 F. App'x at 335.

The ALJ also considered Plaintiff's daily activities in assessing his credibility [11, pp. 25-26]. It is appropriate for an ALJ to consider the claimant's daily activities when deciding the claimant's disability status. *Leggett v. Chater*, 67 F.3d 558, 565 n. 12 (5th Cir. 1995); *Reyes v. Sullivan*, 915 F.2d 151, 154–55 (5th Cir. 1990); 20 C.F.R. § 404.1529(c)(3)(I). The ALJ noted Plaintiff testified that prior to his date last insured he could walk a couple of hundred yards [11, pp. 25, 78]. The Court finds that the ALJ properly evaluated the relevant factors in reaching his conclusions regarding plaintiff's credibility and those conclusions are supported by the substantial evidence of the record

Plaintiff contends that the ALJ did not address a July 2010 medical opinion from his primary care provider, Dr. Steve Morris [13, pp. 13-14; 11,p. 347]. Dr. Morris explained that he had treated Plaintiff since February 2010 [11, p. 347]. Dr. Morris opined Plaintiff could not work due to chronic pain and because his pain medication created a workplace safety issue [11,p. 347]. Defendant contends that Dr. Morris' opinion did not indicate whether his assessment applied at or prior to Plaintiff's date last insured [11, p. 347]. Evidence showing degeneration of a claimant's condition after the DLI is irrelevant to the ALJ's disability analysis. *Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995); *McLendon v. Barnhart*, 184 F. App'x 430, 431 (5th Cir. 2006).

The Court finds that the opinion of a treating physician who is familiar with a claimant's medical condition should generally be accorded considerable weight in determining disability. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). In fact, a treating physician opinion may even be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). However, the ALJ is free to assign little or no weight to the opinion of any physician, even a treating source, for good cause *Id.* Good cause arises where statements are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.

*Perez*, 415 F.3d at 466; *Newton*, 209 F.3d at 456. Consequently, treating physicians'

opinions are not only not conclusive in disability claims, *Perez*, 415 F.3d at 466, but

may be rejected when the evidence supports a contrary conclusion. *Martinez v.*

*Chater*, 64 F.3d 172, 176 (5th Cir. 1995)**.**

After his assessment of  Plaintiff's RFC, the ALJ found at step four of the

sequential evaluation process that Plaintiff could not perform his past relevant work

[11,p. 22, Finding No. 6].  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  Thus, the ALJ,

determined at the fifth step that Plaintiff could perform other work.  *See* 20 C.F.R. §§

404.1520(a)(4)(v),  404.1560(c)(1).  Once the ALJ determines a claimant's

impairments prevents him from performing his past relevant work, the Commissioner

must produce expert vocational testimony or other similar evidence to establish that

other gainful employment  in the national economy that the claimant  is capable of

performing in spite of his existing impairments. *Crowley v. Apfel*, 197 F.3d 194,198

(5th Cir. 1999);  20 C.F.R. § 404.1560(c)(2); *Lawler v. Heckler,* 761 F.2d 195, 198

(5th Cir. 1985); *Dellolio v. Heckler,* 705 F.2d 123, 127–28 (5th Cir. 1983).  *Selders*,

914 F.2d at 618.  The burden, then, shifts back to the Plaintiff to prove he "in fact

cannot perform the alternate work in order to be found disabled." *Crowley v. Apfel*,

197 F.3d 194,198 (5th Cir. 1999); *Selders*, 914 F.2d at 618. …

The ALJ examined the Medical-Vocational Guidelines "the Grids" to determine

whether the Grids might direct a conclusion of disabled or not disabled given

Plaintiff's RFC and other vocational factors [11,p. 23].   The ALJ, however, recognized Plaintiff had non-exertional limitations and he could use the Grids only as a framework for his decision [11,p. 23]. 20 C.F.R. § 404.1569, 404.1569a(d); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2).   When a claimant's vocational factors do not fit the criteria of a particular Grid rule, the generally preferred course of action is to obtain testimony from a vocational expert (VE) to help determine whether other work exists, which is what the ALJ did in Plaintiff's case. [11,pp. 27, 57-61]. *Lawler*, 761 F.2d at 198.

The ALJ asked the VE to assume an individual with Plaintiff's age, education, work experience, illiteracy, and RFC [11,pp. 89-90)] When the ALJ asked the VE if jobs existed that such an individual could perform, the VE testified the individual could perform representative occupations such as a bench assembler, an escort vehicle driver, a pizza delivery driver, and a surveillance systems monitor [11,pp 23, 90-93]. The ALJ asked the VE if her testimony complied with the Dictionary of Occupational Title (DOT).  [11,p. 93]. The VE replied, "Yes, your honor" .*Id*. Defendant contends that  the ALJ's hypothetical question to the VE encompassed all the limitations the ALJ included in his assessment of Plaintiff's RFC [11,pp. 20, 89-90)] The Court finds that record provides substantial evidence to support the hypothetical question to the VE and the ALJ's RFC finding  [11,pp. 20-24].   The VE's testimony provided substantial evidence to support the ALJ's finding that Plaintiff could perform other

work and was not disabled [11,pp 23-24, 91-93].  *Dashti v. Astrue*, 508 F. App'x 347, 350-51 (5th Cir. 2013).

Plaintiff asserts that (1) the ALJ did not resolve an inconsistency between the VE's testimony and (2) the ALJ did not include all of his limitations in the hypothetical question posed to the VE [13, pp 6-14].

Plaintiff contends that the ALJ's finding, based on the testimony of a VE, that he can perform work such as a bench assembler, an escort vehicle driver, a pizza delivery driver, and a surveillance systems monitor is not supported by substantial evidence because the requirements of these jobs, as listed in the Dictionary of Occupational Titles (DOT), require the ability to read and write and therefore cannot be performed with his limitations [13,pp 7-11].  Specifically, Plaintiff contends that the ALJ did not ask the VE if there were any conflicts between his testimony and the DOT. [11,p.8]  Instead Plaintiff contends that the ALJ asked the VE whether his testimony was in compliance with the DOT.  Plaintiff cites parts of the definitions from the DOT that indicate that each job involves at least minimal literacy [13,p. at 8] Plaintiff asserts that when the DOT job descriptions and his illiteracy are considered together, the ALJ's finding that he can perform these positions is not supported by substantial evidence [ 13, pp. 7-11].

Defendant contends under SSR 00–4p, occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the

DOT. *See* SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A.). Defendant asserts as part of the ALJ's duty to fully develop the record of a hearing, the ALJ "will inquire, on the record, as to whether or not there is such consistency." *Id.* Thus, Defendant posits when there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination of disability. *Id*. Neither the DOT nor the VE testimony automatically "trumps" the other when there is a conflict. *Id.* A conflict must be resolved by determining whether the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id.* The ALJ must explain in the determination or decision how any conflict that has been identified was resolved. *Id.* at *4. Defendant contends the ALJ complied with his duty under SSR 00–4p by asking the VE, on the record, whether her testimony conformed to the DOT [ 11, p. 93]. The VE responded in the affirmative, and Plaintiff's counsel did not present any conflict through cross-examination of the VE [ 11, pp. 93-94].

The Court finds as Plaintiff's counsel presented no question at the hearing which would trigger a reason for the ALJ to elicit a "reasonable explanation" for any possible conflict, the ALJ was entitled to accept and rely upon the VE's testimony regarding the available occupational base. Accordingly, the Court further find the ALJ properly relied on the VE's testimony, and his finding that Plaintiff can perform work

existing in significant numbers in the national economy is supported by substantial evidence . *Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:11–CV–3126–L, 2013 WL 632104, at \*13 (N.D.Tex. Feb.4, 2013) (citing *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 613–14 (E.D. Tex. 2009)), adopted in 2013 WL 628561 (N.D.Tex. Feb.20, 2013). The administrative record contains such a basis in the form of expert testimony by a VE that assumed the ALJ's RFC finding, which included his illiteracy. The ALJ relied on the VE's testimony because the VE is familiar with the specific requirements of jobs corresponding to Plaintiff's RFC. In addition, the record indicates Plaintiff has performed substantial gainful activity despite his illiteracy [11,pp. 156-58, 174-79].

Plaintiff also contends that the ALJ's hypothetical question to the VE did not include limitations assigned by Dr. Rodriquez in August 2001 that he should avoid prolonged standing or walking, and walking over uneven surfaces [13, pp 11-14]. Defendant asserts that the ALJ, however, is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Defendant explained as Plaintiff alleged a disability onset date of December 15, 2005 [11, p. 125], Dr. Rodriquez's 2001 assessment is of little relevance. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *McSwain v. Astrue*, No. 3:10–CV–1060, 2011 WL 248544, at \*8 (N.D. Tex. Jan. 25,

2011).  Moreover, Defendant points out that  the ALJ noted  [11,p. 17] in January of 2002, Dr. Rodriguez examined  Plaintiff's right foot and found it was well healed with excellent circulation  and  was  normal  neurologically  [11,pp.  17,  406].  Although Plaintiff complained of "some pain in the lateral aspect of his foot," Dr. Rodriguez only recommended a shoe insert.  [11,pp 17, 406].  Dr. Rodriquez did not indicate in this  report  that  Plaintiff  had  any  standing  or  walking  limitations  [11,p.  406]. Moreover, the ALJ assessed his sitting and standing ability and his  RFC finding included restrictions on Plaintiff's walking, sitting, and standing [11,pt 20].  Thus the Court finds that Plaintiff failed to prove his impairments were more limited than that found by the ALJ.

In conclusion, the Court finds that the ALJ used the proper legal standards and that his opinion is supported by substantial evidence. Based on the foregoing, the Court  recommends that the Plaintiff's appeal be dismissed with prejudice; and, that Final Judgement in favor of the Commissioner be entered.

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk

of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Report and Recommendation that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 7th day of January, 2014.

_____/s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE